IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBERT BAILEY,**

    Petitioner,

    v.

**GARY MOHR, DIRECTOR,**

    Respondent.

CASE NO. 2:14-CV-2751
CHIEF JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE KEMP

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition, the return of writ, the traverse, and Respondent's reply. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition be **DENIED** and that this action be **DISMISSED.**

### I. Procedural History

The following facts are taken from the parties' filings, which include all of the relevant state court documents.

This case involves Petitioner's convictions after a jury trial in the Franklin County, Ohio, Court of Common Pleas on one count of voluntary manslaughter and one count of tampering with evidence. A charge of having a weapon while under a disability was tried to the court and Petitioner was convicted of that crime as well. He timely appealed to the Tenth District Court of Appeals, raising two issues, one relating to the imposition of consecutive sentences and one relating to the sufficiency of the evidence. In a decision

dated August 20, 2013, the court of appeals affirmed the convictions but remanded the case for re-sentencing based on its determination that the trial court imposed consecutive sentences without making the findings required by R.C. §2929.14(C)(4). *State v. Bailey*, 997 N.E.2d 194 (Franklin Co. App. 2013). On October 11, 2013, Petitioner was re-sentenced to a total of seventeen years in prison. *Return*, Ex. 1.

Petitioner did not immediately appeal from the re-sentencing entry (nor did he timely appeal from the court of appeals' decision). However, on November 6, 2014 he filed a motion with the state court of appeals for leave to file a delayed appeal, arguing that he was not explicitly told by the trial court, during the re-sentencing hearing, that he had the right to have counsel appointed for him on appeal if he was indigent (although he conceded that he had been advised of his right to appeal the sentence), and that he would have instructed his attorney to file a notice of appeal had he been asked. He further claimed that his attorney told his family members that an appeal had, in fact, been filed, even though it had not. *Return*, Exhibit 23. The State opposed the motion, and in a Memorandum Decision issued on December 16, 2014, the court of appeals denied it, reasoning that "defendant failed to set forth a reasonable explanation for his failure to timely file an appeal...." *Return*, Ex. 26. His timely appeal of that ruling to the Ohio Supreme Court was not accepted. *Return,* Ex. 34.

While that matter was pending, on December 4, 2014,Petitioner filed a notice of appeal with the Ohio Supreme Court from the state court of appeals' August 20, 2013 decision, accompanied by a motion for leave to file a delayed appeal. In that motion, he

asserted that he never received a date-stamped copy of the decision and that his appellate attorney never consulted with him about taking an appeal to the Ohio Supreme Court. The State opposed that motion as well, and the Ohio Supreme Court denied it. *State v. Bailey*, 142 Ohio St.3d 1452 (Apr. 29, 2015).

Before all of his state court proceedings were completed, Petitioner filed this action for a writ of habeas corpus. His grounds for relief are as follows (stated exactly as he presents them in the Petition, Doc. 4):

> **FIRST GROUND FOR RELIEF:** Petitioner's 6th and 14th Amendment rights as guaranteed by the U.S. Constitution, was violated, on grounds that appellate counsel Mr. Reed "abandoned" the petitioner's case by: (a) failing to file a direct appeal (following the 'resentencing hearing); and by abandoning Petitioner's case proceedings, for collateral relief; and for failing to file an appeal with the Supreme Court of Ohio.
>
> **SECOND GROUND FOR RELIEF**: Petitioner's 6th and 14th Amendment rights as guaranteed by the U.S. Constitution, were violated, when the Court of Common Pleas denied Petitioner his right to counsel of his choice, and where the Common Pleas Coiurt kept the request for different counsel from being "a part of the record" for direct appeal review.
>
> **THIRD GROUND FOR RELIEF**: Petitioner's 6th and 14th Amendment right was violated on grounds that Bailey's conviction is not supported by sufficient evidence, by proof beyond a reasonable doubt, and is against the manifest weight of the evidence.
>
> **FOURTH GROUND FOR RELIEF**: Petitioner's 6th and 14th Amendment rights as guaranteed by the U.S. Constitution was violated, as a result of the fact that the court of appeals judgment (pertaining to his 6th amendment claims of ineffetive assistance of trial and appellate counsel claims) of the court of appeals judgment, was "contrary to," and was an "unreasonable application of" clearly established federal law, as determined by the Supreme Court.

In the Return, Respondent argues that the petition is time-barred because it was not filed within one year of the date that the state court judgment became final, something required by 28 U.S.C. §2244(d)(1). Alternatively, Respondent contends that grounds one, two, and four were not fairly presented to the state courts, that all of his grounds for relief were procedurally defaulted or lack merit, and that ground three, to the extent that it raises a manifest weight of the evidence claim, is not cognizable in federal habeas corpus. Petitioner's reply addresses the question of whether the statute of limitations should be equitably tolled. The Court will begin its analysis with the statute of limitations question.

## II. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d) provides:

> (d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The key dates in this case are these. Petitioner was re-sentenced, after his case was remanded from the state court of appeals, on October 11, 2013. When he did not timely appeal that judgment, the limitations clock began to run on the date when he could have timely appealed - which, according to Respondent, was Tuesday, November 12, 2013. *See Coffey v. Warden, Warren Correctional Institution*, 2007 WL 951619, *3 (S.D. Ohio March 28, 2007)("because petitioner did not seek 'direct review' of his conviction or sentence, petitioner's conviction became 'final' within the meaning of 28 U.S.C. § 2244(d)(1)(A) when the 30–day period for filing an appeal as of right to the Ohio Court of Appeals"); *see also Keeling v. Warden, Lebanon Correctional*, 673 F.3d 452 (6th Cir. 2012). Petitioner signed his petition for a writ of habeas corpus on December 19, 2014 and, according to his certificate of service, mailed it on December 22, 2014. That is a span of over thirteen months. Consequently, unless the running of the statute was tolled either by some state court filing, or equitably, this action is barred by the statute of limitations.

Here, Petitioner filed a motion for leave to file a delayed direct appeal on November 6, 2014, which, if it were an action described in §2244(d)(2), would have tolled the running of the statute of limitations for as long as it was pending - which was well after the date that his federal habeas corpus petition was filed. Section §2244(d)(2) refers to a "properly filed application for State post-conviction or other collateral review," so the question then

becomes whether the motion for leave to file a delayed appeal was "properly filed." Although Petitioner's motion for leave to take a delayed direct appeal was denied as untimely - a fact which Respondent relies upon in arguing that it was not properly filed - the Court of Appeals has held that because there is no time limit in Ohio for filing a notice of delayed appeal, "a motion for delayed appeal to the Ohio Court of Appeals, even if 'ultimately unsuccessful,' is a 'properly filed' motion under Ohio R. App. P. 5 for state collateral relief that serves to toll the limitations period under § 2244(d)(2))." *Reynolds v. Warden, Hocking Correctional Facility*, 2016 WL 234857, *7 (S.D. Ohio Jan. 19, 2016), *adopted and affirmed* 2016 WL 659141 (S.D. Ohio Feb. 18, 2016), citing *Board v. Bradshaw*, 805 F.3d 769, 771-76 (6th Cir. 2015) . Consequently, the statute of limitations was tolled by Petitioner's motion for leave to take a delayed appeal, and his petition was timely filed.

### III. Procedural Default

The next issue raised by Respondent is whether Petitioner's claims were procedurally defaulted. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982 (*per curiam*) (citing *Picard v.*

*Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues

that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Edwards,* 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is

8

because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J.,

> dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

### A. Third Ground for Relief

The Court begins its analysis with Petitioner's third ground for relief, which raises the related claims that his conviction was against the manifest weight of the evidence and that it was not supported by sufficient evidence. Respondent is correct that the first part of this claim arises solely under state law and that a federal court cannot consider it, since a federal habeas corpus petition must raise a claim that the petitioner is in custody in violation of the United States Constitution or federal law. *See, e.g., Hess v. Eberlin,* 2006 WL 2090093, *7 (S.D. Ohio July 25, 2006). The second part raises a claim under the Due Process Clause. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Petitioner presented this claim to the Ohio courts through his initial direct appeal. He did not, as the procedural history cited above demonstrates, either timely appeal the court of appeals' rejection of this claim to the Ohio Supreme Court or raise it again in a

timely appeal from the re-sentencing entry. Consequently, the claim was not fairly presented to the Ohio Supreme Court at any time, and that court never considered its merits. Ohio's rules relating to filing timely appeals have been consistently held to be adequate and independent grounds for denying relief. That is a procedural default, and unless Petitioner can demonstrate cause for that default, this Court cannot consider the merits of his sufficiency of the evidence claim. *See, e.g., Bonilla v. Hurley*, 370 F.3d 494 (6th Cir. 2004).

One possible reason that this claim was not timely raised in the Ohio Supreme Court is that Petitioner's appellate counsel did not appeal the August 20, 2013 court of appeals decision. However, nothing in the record shows that Petitioner asked him to do so, and he did not raise that issue in a timely fashion either before the Ohio Court of Appeals or the Ohio Supreme Court. Consequently, that reason has itself been procedurally defaulted.

A second reason relates to Petitioner's failure to take a timely appeal of the re-sentencing entry. He attempted to excuse that failure by arguing (in his motion for leave to file a delayed appeal) that even though he was told, at the re-sentencing hearing, that he had a right to appeal, he was not asked whether he wanted a notice of appeal filed on his behalf, and that he also thought that counsel had filed a notice of appeal based on what counsel told his family members. He claimed that it was only when his motion for a transcript was denied in August, 2014, that he learned that no appeal had been taken. *See Return*, Ex. 25. The state court of appeals concluded, however, that the three-month delay

between that discovery and the filing of the motion for delayed appeal had not adequately been explained and that the motion for a delayed appeal was therefore untimely. Consequently, any claim of ineffective assistance of counsel which relates to the failure to file a timely notice of appeal from the re-sentencing entry were themselves procedurally defaulted because they were not timely presented to the Tenth District Court of Appeals. Under *Edwards v. Carpenter, supra*, if a ground advanced as cause for a procedural default has been procedurally defaulted, that ground cannot excuse the original default, and that is the case here. Additionally, even if counsel initially failed to take the appeal as requested, the specific grounds relied on by the court of appeals for declining to hear Petitioner's delayed appeal was his three-month delay after learning that no appeal had been filed. Under those circumstances, he would be unable to show prejudice from counsel's failure. *See, e.g., Smith v. State of Ohio Dept. of Rehabilitation and Correction*, 463 F.3d 426, 436 (6th Cir. 2006).

A procedural default can also be excused on grounds that the Petitioner is actually innocent. Petitioner makes that claim here, arguing that the evidence did not support his conviction. There are several problems with that claim. First, in order to excuse a procedural default, a petitioner must come forward with evidence of actual, as opposed to legal, innocence. As the Court of Appeals has explained, interpreting *Schlup v. Delo*, 513 U.S. 298 (1995),

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the

>trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones*, 395 F.3d 577, 589–90 (6th Cir.2005); *see also House v. Bell,* 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). Here, Petitioner does not base his actual innocence claim on new evidence but on the evidence presented at trial. That is inadequate under *Schlup*.

Further undercutting Petitioner's claim, a jury did find him guilty based on the evidence presented at trial, and the state court of appeals affirmed that conviction, rejecting both of his claims concerning the weight and sufficiency of the evidence. As that court described the evidence of record, *see State v. Bailey*, 997 N.E. 2d at 195-96,

>On March 2, 2011, Robert Dillon was riding his bicycle down the sidewalk on the east side of Hague Avenue in Franklin County, Ohio. Appellant and his daughter, Farron Bailey, lived together on the west side of Hague Avenue. Their dogs got loose and ran over towards Dillon, which

13

prompted a heated argument between Farron and Dillon.

Witnesses testified that Farron crossed the street to confront Dillon during this initial exchange. She then departed back across the street to her house. At some point during Farron and Dillon's exchange, appellant also emerged from the house, crossed the street, and confronted Dillon. Appellant and Dillon argued, and then appellant too returned to his house.

Farron was the first to re-emerge, this time carrying a baseball bat. Appellant followed behind her holding a handgun in plain view. Several neighbors saw the gun, and one eyewitness testified that he heard the distinct "clack, clack" sound of appellant racking his pistol to chamber a round on his way towards Dillon. (Tr. Vol. I, 126.) Appellant and Farron crossed the street again, and the argument between them and Dillon escalated violently.

Farron struck Dillon repeatedly with her baseball bat, Dillon swung a chain-style bike lock at the Baileys, and appellant and Dillon exchanged blows with their fists. The fight between appellant and Dillon went to the ground, and while they were wrestling, appellant's gun discharged. The bullet struck Dillon in the abdomen and exited his back.

There was conflicting testimony at trial regarding the position of appellant and Dillon when the shot was fired. However, one eyewitness testified that appellant was on top of Dillon, pinning him with his knee, when she saw appellant move his gun from behind his back towards Dillon. Then, she heard the gun fire.

After Dillon was shot, appellant and Farron retreated with their weapons back to their home, each crossing the street a final time. Appellant hid his gun underneath an upstairs mattress and the bat was placed in a first floor closet, where both were later discovered by police.

After the shooting, Dillon stood up and began to walk with his bicycle, but collapsed to the ground shortly thereafter. Neighbors called 9–1–1 and attempted to administer aid to Dillon, but he died as a result of the gunshot wound.

While neighbors were assisting Dillon and waiting for police to arrive, appellant and Farron came back out of their house and asked what happened. One neighbor responded, "you know what * * * happened. Get

back across the street where you belong because you guys did this and you're not coming over here." (Tr. Vol. II, 235–36.) Appellant and Farron complied, and they were arrested outside of their house as soon as police arrived.

Several eyewitnesses testified at trial that appellant and Farron were the aggressors. They crossed the street several times during the ordeal, while Dillon never left his side of the street. They brought weapons to the fight and used *196 them. Dillon did have a handgun concealed in his pants, but he did not brandish it during the fight. Paramedics found it fully loaded and in its holster after the shooting.

Appellant and Farron both testified at trial that they saw the gun and that Dillon motioned towards his pants as if he had a gun during the incident. However, they did not tell police that they saw the gun during the investigation, and during cross-examination, both appellant and Farron admitted that they were claiming they saw the gun for the first time at trial.

Appellant further claimed at trial that his gun went off accidentally during the struggle with Dillon. Plaintiff-appellee, the State of Ohio, countered with expert testimony establishing that appellant's gun required a little more than nine pounds of pressure applied to the proper surface of the trigger to fire a round.

The state also put forth evidence regarding gunshot residue. Both appellant and Farron's hands tested positive for gunshot residue. However, Dillon's hands were not tested by police. The state's forensic scientist explained the significance, testifying that finding "gunshot residue particles does not mean that somebody fired a firearm." (Tr. Vol. III, 543.) It means that an individual either fired a gun, was in the vicinity of where a gun was fired, or arrived in the area where a gun was fired afterwards and picked up the residue secondhand.

Petitioner argued on appeal that there was insufficient evidence to prove that he acted knowingly, which is an element of voluntary manslaughter under Ohio law. Disagreeing, the court of appeals said that "[t]he evidence presented at trial could lead a rational juror to conclude that appellant was aware of the probable result of his actions.

Moreover, the jury was free to assign credibility to witnesses, and believe the testimony of others over the testimony of appellant and Farron." *Id.* at 199. Further, the court observed that "the jury was free to believe the eyewitness that testified appellant was on top of Dillon, pinning him with his knee, when the gun fired. Additionally, several witnesses painted appellant and Farron as the aggressors. They crossed the street back-and-forth twice during the ordeal, while Dillon never left his side of the street. Appellant openly brandished a handgun, and one witness heard him chamber a round on his way towards Dillon." *Id.* The court concluded that there was sufficient evidence to support the conviction and that the jury did not clearly lose its way. *Id.*

In his petition, Petitioner challenges this conclusion as an unreasonable application of clearly established federal law. He contends that the court of appeals simply got the facts wrong; he saw the victim and his daughter arguing, showed the victim the gun in order to break up the fight, thought he had done so successfully, was surprised when the victim returned to the fight, dropped the gun, and accidentally shot the victim as the two of them struggled to gain possession of it. Testimony to the contrary was, in Petitioner's opinion, false. He faults the court of appeals for "disregard[ing] the testimony offered by the Bailey's (sic), and, instead, rel[ying] upon the testimony offered [by] bystanders." *Petition* at 37. Finally, Petitioner suggests that this Court should hold a hearing, admit additional evidence, and find that the conviction was insufficiently supported by evidence showing beyond a reasonable doubt that Petitioner acted knowingly

The flaw in Petitioner's argument is that neither the state court of appeals, nor this

16

Court, is permitted by law to second-guess the jury's decision about which witnesses to believe. Resolving conflicts in the testimony is precisely the jury's role in a case. *Jackson v. Virginia*, *supra*, the leading Supreme Court opinion on this issue, puts it this way: it is the "responsibility of the trier of fact [here, the jury] fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. at 319. That is not the responsibility of either the appellate courts or a federal habeas court. Further, as *Jackson* noted, "this type of claim can almost always be judged on the written record without need for an evidentiary hearing in the federal court." *Id*. at 322. This is especially true given the provisions of 28 U.S.C. §2254(e)(1) that "a determination of a factual issue made by a State court shall be presumed to be correct' and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Finally, the Supreme Court recently held, in *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), that " review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Thus, this Court can neither take new evidence nor engage in the kind of second-guessing of the jury which Petitioner invites. That being so, his claim of actual innocence fails, meaning that he cannot avoid the procedural default of his third ground for relief, and also meaning that his claim under the Due Process Clause based on the sufficiency of the evidence lacks merit even if this Court were to consider it.

### B. Remaining Grounds for Relief

The discussion of Petitioner's third ground for relief applies to his other grounds

for relief as well. Again, none of them were presented in a timely way either to the state court of appeals or to the Ohio Supreme Court. To the extent they were presented at all, they were raised either in the untimely motion for leave to take a delayed appeal to the Tenth District Court of Appeals or for leave to take a delayed appeal to the Ohio Supreme Court. Any claim that the delays resulted from the constitutionally ineffective assistance of counsel have also been defaulted, and, again, there is no showing of actual innocence that would excuse the default. Further, many of those claims seek to excuse the failure of Petitioner's counsel fairly to present his sufficiency of the evidence claim to the state courts in a way that preserved it for federal habeas corpus review. But even if the Court were to conclude that it could reach the merits of that claim, as the previous section of this Report and Recommendation demonstrates, that claim has no merit. Again, as a federal habeas court, this Court is "bound by two layers of deference to groups who might view facts differently" - the jury and the state appellate court. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). This Court "cannot even inquire whether *any* rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he was charged." *Id*. It can only consider whether the state appellate court's view that a rational jury could have convicted the petitioner was unreasonable. Petitioner clearly cannot meet this standard here where, as he concedes, there was testimony at trial to support the State's theory that he was the aggressor and that the firearm did not discharge accidentally. True or not, the jury clearly believed that testimony, and, if believed, it supported their verdict. Consequently, even had Petitioner's counsel properly preserved this claim, he would not

18

be entitled to relief.

## IV. Recommended Disposition

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## V. Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a

certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge